JOHN D. TENNERT III (NSB No. 11728)
jtennert@fennemorelaw.com
FENNEMORE CRAIG P.C.
9275 W. Russell Road, Suite 240
Las Vegas, NV  89148
Telephone: 702.692.8000
Facsimile: 702.692.8099

ERIC BALL (CSB No. 241327) (*pro hac vice*)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
(*pro hac vice*)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Fax: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
 (*pro hac vice*)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
(*pro hac vice*)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Fax: 415.281.1350

Attorneys for Plaintiff
YUGA LABS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:23-cv-00010-APG-NJK |
| Plaintiff and Counterclaim Defendant, | **[USDC, Central District of California Civil Case No. 2:22-cv-4355-JFW-JEM]** |
| v. | **DECLARATION OF KIMBERLY CULP IN SUPPORT OF PLAINTIFF YUGA LABS, INC.'S MOTION FOR SANCTIONS AND AN ORDER TO SHO CAUSE RE CONTEMPT OF RYAN HICKMAN** |
| RYDER RIPPS and JEREMY CAHEN, | |
| Defendants and Counterclaim Plaintiffs. | |

FENWICK & WEST LLP
ATTORNEYS AT LAW

I, Kimberly Culp, declare:

1.     I am an attorney admitted to practice in California and am an attorney with the law firm of Fenwick & West LLP, counsel for Plaintiff Yuga Labs, Inc. ("Plaintiff" or "Yuga Labs") in the above-captioned matter.  I make this declaration based on my own personal knowledge.  If called as a witness, I could testify competently to the facts set forth herein.

2.     I submit this declaration in support of Yuga Labs' Memorandum of Points and Authorities in Support of its Motion for Sanctions and an Order to Show Cause re Contempt of Ryan Hickman ("Mr. Hickman").

3.     On January 6, 2023, Yuga Labs filed a Motion to Compel Mr. Hickman's compliance with a subpoena served on him on November 14, 2022 ("November Subpoena").  ECF No. 10.

4.     On February 14, 2023, the Court issued an order granting Yuga Labs' Motion to Compel ("Order").  ECF No. 29.

5.     On February 14, 2023, Mr. Hickman was served with the Order by email and mail through the United States Postal Service.  ECF No. 31.

6.     On March 10, 2023, I contacted Mr. Hickman at the same email he had used to communicate with me previously to notify him of his obligations under the Court's Order and the March 14, 2023 deadline to comply.  Attached hereto as **Exhibit 1** is a true and correct copy of this email.

7.     On March 15, 2023, I followed up with Mr. Hickman by email and a letter sent by overnight mail to notify him of his failure to comply with the Court's Order by the March 14, 2023 deadline and of Yuga Labs' intent to seek sanctions against him if he further refused to comply.  In these communications, I also requested to meet and confer with Mr. Hickman to discuss Mr. Hickman's non-compliance.  Attached hereto as **Exhibit 2** are true and correct copies of this email and letter.

8.     On March 20, 2023, Mr. Hickman responded by email stating: "I am out of country until 4/3/2023.  I do not have additional materials that exist or are accessible to me, re:

subpoena. have checked.  I can schedule another sitdown on any day the week of 4/3."  Mr. Hickman did not make any of these statements under oath.

9.     That same day, on March 20, 2023, I responded to Mr. Hickman by email requesting to meet and confer with Mr. Hickman to discuss his email response.  Attached hereto as **Exhibit 3** is a true and correct copy of this email.

10.    On March 21, 2023, I met and conferred with Mr. Hickman via teleconference to discuss his non-compliance with the Court's Order.  During this conference, Mr. Hickman stated that he would conduct a search for responsive documents and provide a sworn declaration detailing his search efforts by March 22, 2023.

11.    On March 22, 2023, Mr. Hickman produced a single, nine-page PDF containing screenshots of various Discord messages (but not the entire channels); private Twitter messages; links to public Discord channels, Twitter posts, and a source code repository; and screenshots of various webpages.  This PDF did not contain messages from the private Discord channel between Mr. Hickman and Defendant Jeremy Cahen ("Cahen") or private text messages between Mr. Hickman and Defendants, even though Mr. Hickman admitted to their existence in his December 7, 2022 deposition.  Attached hereto as **Exhibit 4** is a true and correct copy of this PDF.

12.    Defendants produced screenshots of private Discord messages between Defendant Cahen and Mr. Hickman relating to RR/BAYC NFTs that Mr. Hickman has not produced.  I have referenced these Discord messages to Mr. Hickman as an example of how we know he is withholding communications or, at the very least, has not fully explained his efforts to comply.  He has neither produced them nor provided a sworn statement explaining why he cannot produce them.

13.    On March 23, 2023, I met and conferred with Mr. Hickman via teleconference to discuss his deficient March 22, 2023 production.  During the conference, I identified specific documents that Mr. Hickman admitted to having in his possession during his December 7, 2022 deposition but that he once again failed to produce, including but not limited to the private

3

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

Discord channel between Mr. Hickman and Cahen and private text messages with Defendants. Mr. Hickman confirmed that he had not specifically reviewed his communications with Defendants during May and June 2022 to determine if those communications were responsive.  I, therefore, provided Mr. Hickman with search parameters for his private communications with the Defendants during the period inclusive of May – June 2022 for any messages relating to Ape Market, RR/BAYC, BAYC, Yuga Labs, or the lawsuit.  Mr. Hickman agreed to search for additional documents using the agreed-upon search parameters.  I also agreed to compromise on the scope of Mr. Hickman's production (e.g., to forego receipt of his communications with Mr. Lehman that have not been produced or his communications with Defendants before May 2022 (which would likely relate to their planning of the business venture) or after June 2022 (which would likely relate to the lawsuit)) if his compliance was otherwise complete as to this narrowed set of documents.  During the conference, we also agreed to conduct a remote deposition of Mr. Hickman on March 31, 2023 if Mr. Hickman complied with our agreement.

14.     On March 24, 2023, Mr. Hickman produced a single, three-page PDF containing screenshots of text messages with Defendant Ryder Ripps ("Ripps) outside of the May-June 2022 timeframe; one screenshot of non-responsive text messages with Cahen; and email communications with OpenSea.  This PDF did not contain messages from the private Discord channel between Mr. Hickman and Cahen or private text messages between Mr. Hickman and Cahen even though Mr. Hickman admitted to their existence in his December 7, 2022 deposition, or explain under penalty of perjury what efforts he made to conclude that he had no communications to produce between himself and either Cahen or Ripps in May or June 2022. Attached hereto as **Exhibit 5** is a true and correct copy of this PDF.

15.     That same day, on March 24, 2023, I emailed Mr. Hickman to notify him of the deficiencies in his March 24 production and requested confirmation that he searched for the additional documents using the search parameters we discussed during our March 23, 2023 teleconference.  I also offered to further meet and confer with Mr. Hickman to clarify the various document production deficiencies.  Attached hereto as **Exhibit 6** is a true and correct copy of

FENWICK & WEST LLP
ATTORNEYS AT LAW

this email.

16.     On March 28, 2023, I followed up with Mr. Hickman by email to request his compliance with the Court's Order and that he search for and produce the missing documents by noon on March 29, 2023.

17.     On March 29, 2023, I emailed Mr. Hickman to notify him that because of his continued failure to produce responsive documents in compliance with the Court's Order which were necessary to proceed with his March 31, 2023 deposition, Yuga Labs would cancel Mr. Hickman's deposition and prepare a motion requesting the Court to find him in contempt.

18.     As of the filing of this Motion, Mr. Hickman has not provided any additional responsive documents beyond what was provided in his deficient March 22 and March 24 productions.

19.     Attached hereto as **Exhibit 7** is a true and correct copy of the Order Denying Defendants' Motion to Stay (ECF No. 178) issued in the case *Yuga Labs, Inc. v. Ripps et al.*, Case No. 2:22-cv-04355-JFW-JEM (C.D. Cal. Mar. 30, 2023).

20.     Attached hereto as **Exhibit 8** is a true and correct copy of the February 3, 2023 Declaration of Thomas Lehman (ECF No. 149-33) provided in the case *Yuga Labs, Inc. v. Ripps et al.*, Case No. 2:22-cv-04355-JFW-JEM (C.D. Cal. Mar. 15, 2023).

21.     Attached hereto as **Exhibit 9** is a true and correct copy of Yuga Labs' Status Report (ECF No. 198) filed in the case *Yuga Labs, Inc. v. Ripps et al.*, Case No. 2:22-cv-04355-JFW-JEM (C.D. Cal. Apr. 4, 2023).

22.     Attached hereto as **Exhibit 10** is a true and correct copy of the consent judgment issued by the Court in the Northern District of New York against Thomas Lehman (ECF No. 12) in the case *Yuga Labs, Inc. v. Thomas Lehman*, Case No. 1:23-cv-00085-MAD-TWD (N.D.N.Y. Feb. 6, 2023) ("Defendant Lehman's acts have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Infringing Products and Services and have deceived and are likely to deceive the relevant consuming public into believing, mistakenly, that the Infringing Products and Services originate from, are

associated or affiliated with, or are otherwise authorized by Plaintiff Yuga Labs.").

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 7, 2023.

*/s/ Kimberly Culp*
Kimberly Culp

FENWICK & WEST LLP
ATTORNEYS AT LAW

DECLARATION OF KIMBERLY CULP ISO MOTION FOR
SANCTIONS AND ORDER TO SHOW CAUSE RE
CONTEMPT
29072293/058484.0002

CASE NO.: 2:23-CV-00010-APG-NJK

*Yuga Labs, Inc. v. Ripps et al.*
D. Nev. Case No.: 2:23-cv-00010-APG-NJK

**Index of Exhibits to Declaration of Kimberly Culp in Support of Plaintiff Yuga Labs, Inc.'s Motion for Sanctions and an Order to Show Cause re Contempt of Ryan Hickman**

| Ex. No. | Document | Page No. |
|---|---|---|
| 1 | March 10, 2023 Email from K. Culp to R. Hickman | 1 |
| 2 | March 15, 2023 Email from K. Culp to R. Hickman | 4 |
| 3 | March 20, 2023 Emails between K. Culp and R. Hickman | 11 |
| 4 | March 22, 2023 Production from R. Hickman | 13 |
| 5 | March 24, 2023 Production from R. Hickman | 23 |
| 6 | March 24, 2023 Email from K. Culp to R. Hickman | 27 |
| 7 | Order Denying Defendants' Motion to Stay (ECF No. 178) issued in *Yuga Labs, Inc. v. Ripps et al.*, Case No. 2:22-cv-04355-JFW-JEM (C.D. Cal. Mar. 30, 2023) | 31 |
| 8 | February 3, 2023 Declaration of Thomas Lehman (ECF No. 149-33) provided in the case *Yuga Labs, Inc. v. Ripps et al.*, Case No. 2:22-cv-04355-JFW-JEM (C.D. Cal. Mar. 15, 2023) | 39 |
| 9 | Yuga Labs' Status Report (ECF No. 198) filed in the case *Yuga Labs, Inc. v. Ripps et al.*, Case No. 2:22-cv-04355-JFW-JEM (C.D. Cal. Apr. 4, 2023) | 51 |
| 10 | Consent judgment issued by the Court in the Northern District of New York against Thomas Lehman (ECF No. 12) in the case Yuga Labs, Inc. v. Thomas Lehman, Case No. 1:23-cv-00085-MAD-TWD (N.D.N.Y. Feb. 6, 2023) | 58 |

# Exhibit 1 – March 10, 2023 Email from K. Culp to R. Hickman

| | |
|---|---|
| **From:** | Kimberly Culp |
| **To:** | Ryan Hickman |
| **Cc:** | Katie Hauh; Anthony Fares |
| **Subject:** | FW: Yuga Labs Inc v. Ripps et al / Case No. 2:23-cv-00010-APG-NJK |
| **Date:** | Friday, March 10, 2023 5:52:10 PM |
| **Attachments:** | 0.png |
| | 1.png |
| | 2.png |
| | 3.png |
| | ECF 29 Order Granting Motion to Compel.pdf |
| | ECF No. 30 Order Denying Motion to Seal.pdf |

Dear Mr. Hickman,

Pursuant to the Court's Order in the case *Yuga Labs, Inc. v. Ripps, et al.*, Case No. 2:23-cv-00010-APG-NJK (D. Nev.), which was served on you via email, personal service, and U.S. Mail on or around February 14, 2023 and which is attached hereto, you are commanded to produce responsive documents to the subpoena served on you on November 23, 2022 and provide a declaration detailing your search efforts by March 14, 2023. Please provide those documents to us by reply all to this email. You are also required to provide further deposition testimony no later than March 28, 2023. Please let us know by March 14, 2023 if you are available to sit for your deposition on Friday, March 24, 2023, or else provide alternative dates and times when you are available to provide further deposition testimony. The deposition will again be held at the offices of Fennemore in Las Vegas.

Nothing in this communication should be construed as a waiver of any of Yuga Labs' rights, which Yuga Labs fully reserves. Additionally, nothing in this communication should be construed as legal advice.

Thank you,
Kimberly

Kimberly Culp
Fenwick | Counsel | +1 650-335-7138 | kculp@fenwick.com | Admitted to practice in California.

---

**From:** Whitehouse, Susan <swhitehouse@fennemorelaw.com>
**Sent:** Tuesday, February 14, 2023 5:12 PM
**To:** derek.gosma@wilmerhale.com; Henry.Nikogosyan@wilmerhale.com; louis.tompros@wilmerhale.com; monica.grewal@wilmerhale.com; scott.bertulli@wilmerhale.com; kingsrborn@gmail.com
**Cc:** Tennert, John <jtennert@fennemorelaw.com>; Anthony Fares <AFares@fenwick.com>; Kimberly Culp <KCulp@fenwick.com>; Katie Hauh <KHauh@fenwick.com>; Braselton, Shawna <SBraselton@fennemorelaw.com>
**Subject:** Yuga Labs Inc v. Ripps et al / Case No. 2:23-cv-00010-APG-NJK

**\*\* EXTERNAL EMAIL \*\***

Please see the attached documents that were filed in the above matter:

- *Order Granting Motion to Compel*
- *Order Denying Motion to Seal*

A hard copy has also been placed in the mail to you.

Susan M. Whitehouse
Legal Administrative Assistant



7800 Rancharrah Parkway, Reno, NV 89511
T: 775.788.2200
swhitehouse@fennemorelaw.com
Legal Administrative Assistant to:
Courtney Miller O'Mara, John D. Tennert III, Geenamarie Carucci Vance, Debbie Sorensen



**CONFIDENTIALITY NOTICE:** The information contained in this message may be protected by the attorney-client privilege. If you believe that it has been sent to you in error, do not read it. Please immediately reply to the sender that you have received the message in error. Then delete it. Thank you.

# Exhibit 2 – March 15, 2023 Email from K. Culp to R. Hickman

| From: | Kimberly Culp |
|---|---|
| To: | Ryan Hickman |
| Cc: | Katie Hauh; Anthony Fares; Ethan Thomas |
| Subject: | RE: Yuga Labs Inc v. Ripps et al / Case No. 2:23-cv-00010-APG-NJK |
| Date: | Wednesday, March 15, 2023 4:37:23 PM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | 2022 03 15 Culp ltr to Hickman re Failure to Comply with Feb 14 Order.pdf |

Mr. Hickman – Please see the attached that is also being sent to you via overnight.  We would like to avoid having to seek relief from the Court again and, therefore, would like to speak to you about your failure to comply with the Court's order and whether you plan to comply.

Kimberly Culp

Fenwick | Counsel | +1 650-335-7138 | kculp@fenwick.com | Admitted to practice in California.



801 California Street                   650.988.8500
Mountain View, CA 94041              Fenwick.com

Kimberly Culp
kculp@fenwick.com  |  650.335.7138

March 15, 2023

ACTION REQUIRED
VIA EMAIL AND OVERNIGHT MAIL

Ryan Hickman
260 Sidewheeler Street
Henderson, NV 89012

Re:    <u>Yuga Labs v. Ripps, Case No. 2:23-cv-10 (D. Nev.)</u>

Dear Mr. Hickman,

As you know, we represent Yuga Labs, Inc. ("Yuga Labs").  Yuga Labs has served you with two subpoenas in relation to the litigation against Ryder Ripps and Jeremy Cahen.  As you also know, on February 14, 2023, the United States District Court for the District of Nevada ordered you to comply with those subpoenas by:

1.  "undertak[ing] a reasonable search for responsive documents and [providing] Plaintiff with a declaration detailing the search efforts undertaken by March 14, 2023";

2.  "produc[ing] the responsive documents by March 14, 2023"; and

3.  "sit[ting] for a further deposition lasting no more than two hours on a mutually agreeable date no later than March 28, 2023."

The Court's order stated that "Hickman is **CAUTIONED** that he must comply with this order and that failure to do so may result in the imposition of significant sanctions, including potentially a finding of contempt."  We served a copy of this order on you on February 14, 2023, and we attach another copy here for your reference.

Despite our efforts to coordinate with you, you have not responded to us.  The date that the Court ordered you to comply with its order has passed, and you have not produced the required documents or declaration.

Ryan Hickman
March 15, 2023
Page 2


We intend to ask the Court to impose sanctions, which would potentially include a finding that you are now in contempt.  Please let us know when you are available to speak with us no later than **Monday, March 20**.  If we do not hear from you, we will proceed with seeking all available remedies from the Court.

                                        Sincerely,

                                        FENWICK & WEST LLP

                                        */s/ Kimberly Culp*

                                        Kimberly Culp

Attachment

1
2
3
4
5
6
7
8
9
10
11

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

YUGA LABS INC.,

    Plaintiff(s),

v.

RYDER RIPPS, et al.,

    Defendant(s).

Case No. 2:23-cv-00010-APG-NJK

**Order**

[Docket No. 10]

12      Pending before the Court is Plaintiff's motion to compel non-party Ryan Hickman's

13 compliance with a subpoena.  Docket No. 10; *see also* Docket No. 12 (redacted version).[1]  The

14 motion to compel is supported by the declaration of Kimberly Culp.  Docket No. 11; *see also*

15 Docket No. 13 (redacted version).  The motion to compel was served on Hickman on January 13,

16 2023.  Docket No. 14.[2]  The deadline to respond to the motion to compel has expired.  *See* Local

17 Rule 7-2(b).  Hickman has consented to the granting of the motion to compel by failing to respond

18 to it.  Local Rule 7-2(d).  The motion to compel is properly resolved without a hearing.  *See* Local

19 Rule 78-1.  For the reasons discussed below, the motion to compel is **GRANTED**.

20 **I.    BACKGROUND**

21      On June 24, 2022, Plaintiff filed suit in federal district court in the Central District of

22 California alleging that Defendants Ripps and Cahen violated the federal laws on false designation

23

24      [1] The Court cites herein to the pagination provided by CMECF, which differs from the native pagination in the motion practice.

25      [2] Because this is a miscellaneous action centered on the subpoena motion practice, the Court employs Rule 4 of the Federal Rules of Civil Procedure with respect to service. *See Rosiere*

26 *v. United States S.E.C.*, 2010 WL 419440, at *1 (D. Nev. Jan. 29, 2010) (indicating that a motion to quash a subpoena "is an initial pleading that should [be] served according to the provisions of

27 Rule 4 of the Federal Rules of Civil Proceeding").  On January 13, 2023, the motion to compel was served on Hickman by leaving it with his adult daughter at his usual place of abode. *See*

28 Docket No. 14; *see also* Fed. R. Civ. P. 4(e)(2)(B).

1

1  of origin and false advertising, as well as related violations, regarding Non-Fungible Tokens

2  known as Bored Ape Yacht Club.  Docket No. 13-1.

3          Non-party Hickman resides in Henderson, Nevada.  *See* Docket No. 14.  On November 14,

4  2022, Plaintiff subpoenaed Hickman to appear for a deposition and to produce documents in Las

5  Vegas, Nevada on November 28, 2022.  Docket No. 13-11.[3]  On November 23, 2022, Plaintiff

6  served an amended subpoena that reflected December 7, 2022, as the date of the deposition and

7  the deadline for the production of documents.  Docket No. 13-4.  On December 7, 2022, Hickman

8  appeared for deposition, but did not produce any documents.  Docket No. 13 at ¶ 20.  Conferral

9  efforts ensued.  *Id.* at ¶¶ 20-21.  On December 20, 2022, Hickman produced a PDF of Discord chat

10  screenshots and two folders of source code.  *Id.* at ¶ 23.  Unsatisfied with the efforts made by

11  Hickman, Plaintiff initiated this miscellaneous action to compel Hickman to produce responsive

12  documents and to provide further testimony regarding those documents.  Docket No. 10 at 8.

13  **II.      STANDARDS**

14          "The discovery process in theory should be cooperative and largely unsupervised by the

15  district court."  *Sali v. Corona Reg. Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018).  Nonetheless,

16  a party may move to compel compliance with a subpoena in the court where the discovery is

17  sought.  Fed. R. Civ. 37(a)(2).  Non-party discovery is limited to any nonprivileged matter that is

18  relevant to any party's claim or defense and is proportional to the needs of the case.  Fed. R. Civ.

19  P. 26(b)(1); *see also ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 530 (N.D.

20  Cal. 2015) (the scope of third-party discovery is subject to the same limitations).  The subpoenaed

21  person bears the burden of showing why the disputed discovery should not be permitted.  *V5 Techs.*

22  *v. Switch, Ltd.*, 2019 WL 7489860, at *1 (D. Nev. Dec. 20, 2019) (citing *Goodman v. United States*,

23  369 F.2d 166, 169 (9th Cir. 1966)).

24  **III.     ANALYSIS**

25          Hickman has responded to Plaintiff's subpoena efforts with a paltry production of

26  documents.  *See* Docket No. 13 at ¶ 22; *see also* Docket No. 13-5 (response of September 29,

27  _____

28  [3] Plaintiff earlier served Hickman with a subpoena to produce documents in Mountainview, California.  Docket No. 13-2.  That subpoena is not at issue in the current proceedings.

2

2022).  Plaintiff has explained that the production made is incomplete in a variety of aspects.  *See* Docket No. 10 at 9-13.  Hickman did not respond to the motion, so the Court takes that showing as true.  *See* Local Rule 7-2(d).  As such, Plaintiff is entitled to an order requiring Hickman to produce responsive documents.[4]

**IV.    CONCLUSION**

For the reasons discussed more fully above, Plaintiff's motion to compel is **GRANTED**. Hickman must undertake a reasonable search for responsive documents and must provide Plaintiff with a declaration detailing the search efforts undertaken by March 14, 2023.  *Cf. V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366-67 (D. Nev. 2019).  Hickman must also produce the responsive documents by March 14, 2023.  Hickman must also sit for a further deposition lasting no more than two hours on a mutually agreeable date no later than March 28, 2023.   Hickman is **CAUTIONED** that he must comply with this order and that failure to do so may result in the imposition of significant sanctions, including potentially a finding of contempt.

The Court **ORDERS** Plaintiff to serve a copy of this order on Hickman and to file a proof of service by February 21, 2023.

IT IS SO ORDERED.

Dated: February 14, 2023

_____
Nancy J. Koppe
United States Magistrate Judge

---

[4] The motion includes a request to hold Hickman in contempt.  Docket No. 10 at 9-10. That is a serious request that is not well-developed, *cf. Taddeo v. Am. Invsco Corp.*, 2015 WL 751072, *1 (D. Nev. Feb. 20, 2015), and was not filed separately as is required, Local Rule IC 2-2(b).  As such, the Court expresses no opinion herein on that issue.

3

# Exhibit 3 – March 20, 2023 Emails between K. Culp and R. Hickman

| | |
|---|---|
| **From:** | Kimberly Culp |
| **To:** | Ryan Hickman |
| **Cc:** | Ethan Thomas; Katie Hauh |
| **Subject:** | RE: Yuga Labs Inc v. Ripps et al / Case No. 2:23-cv-00010-APG-NJK |
| **Date:** | Monday, March 20, 2023 1:15:45 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

Mr. Hickman – While I appreciate that you are currently out of the country, the Court ordered you to produce your documents (including those about which you testified under oath at your deposition) or provide us with a declaration by March 14.  You have not done so.  The Court also ordered you to, thereafter, sit for another 2 hours of deposition by March 28.  You are not agreeing to do so and April 3 is the last day of fact discovery in our case.  So, I do not anticipate that this timing will work for us.

Nevertheless, I would like to meet and confer with you and will be available tomorrow to complete that meet and confer.  Please let me know when you are available to meet and confer on Tuesday, March 21.

Regards,
Kimberly

Kimberly Culp
Fenwick | Counsel | +1 650-335-7138 | kculp@fenwick.com | Admitted to practice in California.

---

**From:** Ryan Hickman <kingsrborn@gmail.com>
**Sent:** Monday, March 20, 2023 3:21 AM
**To:** Kimberly Culp <KCulp@fenwick.com>
**Subject:** Re: Yuga Labs Inc v. Ripps et al / Case No. 2:23-cv-00010-APG-NJK

**\*\* EXTERNAL EMAIL \*\***
Kimberly,

I am out of country until 4/3/2023.
I do not have additional materials that exist or are accessible to me, re: subpoena. have checked.
I can schedule another sitdown on any day the week of 4/3.

Regards


Ryan Hickman

*"Everything you do matters"*

**Pg. 12**

# Exhibit 4 – March 22, 2023 Production from R. Hickman

**I, Ryan Hickman am representing in writing, under oath that I have conducted a reasonable search to produce the materials requested in Case Yuga Labs v Ripps,  No. 2:23-cv-10. They are organized by each request: Details regarding these searches are inline. Statements marked in Red are mine.**

Discord communications from January 2022 to present related to RR/BAYC NFTs (which includes Ape Market), BAYC NFTs, and/or Yuga Labs, including but not limited to the private channel with Thomas Lehman ("Lehman") and the private channel with Defendant Cahen ("Cahen");

**Following a search in discord, I went across the channels for discussions related to Yuga Labs, BAYC, Ape Market & RR/BAYC. Note: searching 'BAYC' inherently surfaces results for 'RR/BAYC'**





**Note: Anything that is an announcement which is also available in public channels has not been included. Instead you can follow the links: https://discord.com/channels/873564453227094078/874092582752382978**



Email communications from January 2022 to present related to RR/BAYC NFTs (which includes Ape Market), BAYC NFTs, and/or Yuga Labs, including but not limited to emails from Defendant Ripps ("Ripps"), Lehman, and OpenSea;

**I do not communicate over email with respect to BAYC, Yuga Labs, ApeMarket, RR/ BAYC. Important to note that this does not include privileged conversations; such as the email exchange between myself and Fenwick attorneys.**

**Specific to OpenSea: OpenSea is a independent, peer to peer marketplace allowing people to trade NFT Tokens with each other. I am not an employee at Opensea, I do not have a partnership with opensea nor do I consult with Opensea.**

**I do not upload materials, nor have any say in the content that OpenSea chooses to display on it's site. Nor have I received emails from OpenSea regarding anything at all since Jan 2023.**

— — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — —

Non-public Twitter communications from January 2022 to present related to RR/BAYC NFTs (which includes Ape Market), BAYC NFTs, and/or Yuga Labs, including but not limited to private Twitter direct messages with Cahen, Ripps, Lehman, and third parties;







**Using twitter search tool for messages to the best of my ability.**

**Additional communications regarding twitter can be found directly via the link in most native format. All items are public. Note: searching 'BAYC' inherently surfaces results for 'RR/BAYC'. Each query is below.**

https://twitter.com/search?q=from%3Ahwonderofworld%20yuga&src=typed_query
https://twitter.com/search?q=from%3Ahwonderofworld%20apemarket&src=typed_query
https://twitter.com/search?q=from%3Ahwonderofworld%20bayc&src=typed_query



Text or SMS communications from January 2022 to present related to RR/BAYC NFTs (which includes Ape Market), BAYC NFTs, and/or Yuga Labs, including but not limited to text messages with Lehman, text messages with Ripps from August 2022, and text messages with Cahen concerning this Litigation;

**Outside of privilege conversations (with attorneys), I have no Text or SMS Communications related specifically to RR/BAYC, Ape Market BAYC NFTs.**

**Specifically, My SMS communications with Tom Lehman are personal in nature and have nothing to do with BAYC, Yuga Labs, RR/BAYC, Ape Market, this litigation or similar.**

**Specifically, My SMS communications with Ripps are not specific to Yuga Labs, BAYC, NFTs, Ape Market, RR/BAYC, this litigation or similar.**

Documents concerning RR/BAYC NFTs (which includes Ape Market), BAYC NFTs, and/or Yuga Labs, including but not limited to those stored on Google Drive and any promotional and/or design materials for Ape Market.

**Notably, as stated in the deposition, Ape Market was not released. The source code that powers Ape Market is open source and available here:**

**https://github.com/reservoirprotocol/marketplace-v1**

**This source uses OpenSea's SeaPort system and is supported and used by dozens of secondary NFT Marketplaces including CoinBase.**

**The design elements are created by 0xResovior**



**This source code uses OpenSea's SeaPort system and is supported and used by dozens of secondary NFT Marketplaces including CoinBase.**

**These design elements are fed in via a URL controlled by Opensea**



**The codebase (powered by secondary marketplace OpenSea) and is used by several NFT marketplaces includes default support for the BAYC collection.  (Note the Multi collection community BAYC example)**



**You can visit the functional BAYC version here:  https://bayc.reservoir.market/collections/ 0xbc4ca0eda7647a8ab7c2061c2e118a18a936f13d**

**Notably the artwork that populates the page is sourced from the OpenSea API.**





**Critically important to understand that Ape Market was not released to the public. Specific discussions around ideas and concepts never made it to a release of Ape Market.**

**Also important: A conversation from March/April 2021 (before Yuga Labs Existed) I worked with a company called ApeSwap which ran (and still runs) on the domain https:// apeswap.finance**

**In collaboration with this team, I also received the a NFT called a "Non Fungible Ape"**

**Ape NFT's are common. Details and records from that time.**





# Exhibit 5 – March 24, 2023 Production from R. Hickman

With regards to our call on Mar 23, 2023 to perform additional searches with additional search criteria; I, Ryan Hickman conducted these additional searches using the specific requests and am representing in writing, under oath that I have conducted a reasonable search to produce the additional materials requested in Case Yuga Labs v Ripps,  No. 2:23-cv-10.

The request was to provide any commiunications related to RR/BAYC, BAYC, Yuga Labs with specific requests to look for communications with OpenSea that may or may not contain those terms. Conversations via text regarding around specific discussions.

I did a detailed search for those materials. I did not see any reference to RR/BAYC, BAYC, Yuga Labs or this litigation. Nonetheless; I've shared those communication.

Text Messages concerning travel to Wyoming. Notably there is no specific results related to requested search terms.



**The specific request for searching for the Text Message of the contact share.**



**The specific request to search for emails related to OpenSea. There are the only two results for all communications with OpenSea that I had from Jan 2022 forward. These are for a collection called "Autoshow".**



# Exhibit 6 – March 24, 2023 Email from K. Culp to R. Hickman

| From: | Kimberly Culp |
| --- | --- |
| To: | Ryan Hickman |
| Cc: | Katie Hauh; Ethan Thomas |
| Subject: | RE: Yuga Labs Inc v. Ripps et al / Case No. 2:23-cv-00010-APG-NJK |
| Date: | Friday, March 24, 2023 6:17:04 PM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

Mr. Hickman,

Thank you for providing these additional documents.  You may remember that during our meet and confer on Thursday, March 23 we requested that you search for additional communications (including private Discord messages, private Twitter DMs, etc. *in addition to* text messages) that are responsive to our requests.  You may also recall that we indicated that we were willing to compromise on your production, which remains incomplete (such as with respect to known communications with Mr. Lehman), if you re-reviewed your communications in any form with Mssrs. Ripps and Cahen during the period inclusive of May – June 2022 for any messages relating to Ape Market, RR/BAYC, BAYC, Yuga Labs, or the lawsuit (whether or not those exact search terms are used) and you agreed to do so.  For example, Mr. Cahen has provided and you testified about a private Discord chat between the two of you.  You have produced none of those messages.  You also testified that you texted with Mr. Cahen about being stressed about the lawsuit.  You have not produced those texts.  We have agreed to defer the filing of our motion for contempt on the promise that we would receive all of your messages with Mssrs. Ripps and Cahen that relate to Ape Market, RR/BAYC, BAYC, Yuga Labs or the lawsuit against Mssrs. Ripps and Cahen.  Please provide them to us, immediately, or explain what you have done to determine that no more such messages exist.

We are available to further meet and confer with you on Monday or Tuesday, if that would be helpful to clarify what is required of you.

Thank you,
Kimberly

Kimberly Culp
Fenwick | Counsel | +1 650-335-7138 | kculp@fenwick.com | Admitted to practice in California.

**From:** Ryan Hickman <kingsrborn@gmail.com>
**Sent:** Friday, March 24, 2023 2:46 PM
**To:** Kimberly Culp <KCulp@fenwick.com>
**Cc:** Katie Hauh <KHauh@fenwick.com>; Ethan Thomas <EThomas@fenwick.com>
**Subject:** Re: Yuga Labs Inc v. Ripps et al / Case No. 2:23-cv-00010-APG-NJK

**\*\* EXTERNAL EMAIL \*\***
Please find attached the materials as a follow up to our call on March 23 with the request to perform

additional searches with additional search criteria for the specific time periods and conversations discussed on the call.

Ryan Hickman

*"Everything you do matters"*

On Wed, Mar 22, 2023 at 4:14 PM Ryan Hickman <kingsrborn@gmail.com> wrote:

> Please find attached the items and statement re: the additional documents.
>
> Note: Anything that was prohibitively difficult to export, (like public twitter) I've shared the links directly, allowing it to be more accessible, and native. This includes code bases.
>
> For the sake of avoid duplicate efforts I didn't include things that were previously shared.
>
> Thank you.
>
> Ryan Hickman
>
> *"Everything you do matters"*
>
> On Mon, Mar 20, 2023 at 7:18 PM Kimberly Culp <KCulp@fenwick.com> wrote:
>
> > Thank you.  I just sent you a calendar invite for 1 p.m. pacific tomorrow with a Zoom link
> >
> > Kimberly Culp
> > Fenwick | Counsel | +1 650-335-7138 | kculp@fenwick.com | Admitted to practice in California.
> >
> > ---
> >
> > **From:** Ryan Hickman <kingsrborn@gmail.com>
> > **Sent:** Monday, March 20, 2023 5:09 PM
> > **To:** Kimberly Culp <KCulp@fenwick.com>
> > **Subject:** Re: Yuga Labs Inc v. Ripps et al / Case No. 2:23-cv-00010-APG-NJK
> >
> > **  ** EXTERNAL EMAIL **  **
> > If the meeting can happen over a zoom or similar technology, I can attend on March 21. If this is possible, kindly share a calender meeting invite. Thank you.

Ryan Hickman

*"Everything you do matters"*

**Exhibit 7 – Order Denying Defendants' Motion to Stay (ECF No. 178) issued in *Yuga Labs, Inc. v. Ripps et al.* (C.D. Cal. Mar. 30, 2023)**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

<u>CIVIL MINUTES -- GENERAL</u>

Case No.   **CV 22-4355-JFW(JEMx)**                            Date:  March 30, 2023

Title:        Yuga Labs, Inc. -*v*- Ripps, et al.

═══════════════════════════════════════════════════════════════

**PRESENT:**
         **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

         Shannon Reilly                              None Present
         Courtroom Deputy                            Court Reporter


**ATTORNEYS PRESENT FOR PLAINTIFFS:**   **ATTORNEYS PRESENT FOR DEFENDANTS:**
               None                                        None

**PROCEEDINGS (IN CHAMBERS):**      **ORDER DENYING DEFENDANTS' MOTION TO STAY**
                                    **PROCEEDINGS [filed 2/23/23; Docket No. 118]**

        On February 23, 2023, Defendants and Counterclaimaints Ryder Ripps ("Ripps") and
Jeremy Cahen ("Cahen") (collectively, "Defendants") filed a Motion to Stay Proceedings ("Motion").
On March 6, 2023, Plaintiff and Counter Defendant Yuga Labs, Inc. ("Yuga") filed its Opposition.
On March 13, 2023, Defendants filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil
Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the
papers without oral argument.  The matter was, therefore, removed from the Court's March 27,
2023 hearing calendar and the parties were given advance notice.  After considering the moving,
opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**[1]

        Yuga is the creator of one of the world's most well known and successful Non-Fungible
Token ("NFT") collections, known as the Bored Ape Yacht Club ("BAYC").  Ripps is a visual artist
and creative designer who purports to create artwork that comments on the boundaries between
art, the internet, and commerce.  In approximately May 2022, Ripps and Cahen created their own
NFT collection, known as the Ryder Ripps Bored Ape Yacht Club ("RR/BAYC").  According to
Yuga, Defendants have misused the BAYC trademarks as part of a scheme to harass Yuga,
mislead consumers, and unjustly enrich themselves.  According to Defendants, the RR/BAYC NFT
collection is a form of "appropriation art" that serves several purposes, including bringing attention
to Yuga's alleged use of racist, neo-Nazi, and alt-right messages and imagery.

---
        [1] The facts are well known to the parties and will not be repeated here except where
relevant to the Court's analysis of the issues presented by Defendants' Motion.

On July 24, 2022, Yuga filed a Complaint against Defendants, alleging causes of action for: (1) false designation of origin (15 U.S.C. § 1125(A)); (2) false advertising (15 U.S.C. § 1125(A)); (3) cybersquatting (15 U.S.C. § 1125(D)); (4) common law trademark infringement; (5) common law unfair competition; (6) unfair competition (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); (7) false advertising (Cal. Bus. & Prof. Code §§ 17500 *et seq.*); (8) unjust enrichment; (9) conversion; (10) intentional interference with prospective economic advantage; and (11) negligent interference with prospective economic advantage.  Docket No. 1.  On December 16, 2022, the Court issued an Order denying Defendants' Anti-SLAPP Motion and denying Defendants' Motion to Dismiss except with respect to Yuga's unjust enrichment cause of action, and that cause of action was dismissed without prejudice.[2]  Docket No. 62.  With respect to Defendants' Motion to Dismiss, the Court rejected Defendants' *Rogers* and fair use defenses.  With respect to Defendants' Anti-SLAPP Motion, the Court held that Yuga's "claims are limited to Defendants' heavily commercial use of the BAYC Marks to sell the same product – NFTs – with the same image . . . to the same customers in the same markets as Plaintiff."  As a result, the Court concluded "that Defendants have failed to make a prima facie showing that [Yuga's] claims 'arise from' an 'act in furtherance of [their] right of petition or free speech.'"

On December 21, 2022, Defendants filed a Notice of Appeal, appealing the Court's denial of their Anti-SLAPP Motion.  Docket No. 63.  On that same day, Defendants informed Yuga that they intended to file a motion to stay all proceedings pending resolution of the appeal.  However, for some unknown reason, Defendants did not immediately file a motion to stay.  Instead, on December 27, 2022, Defendants filed their Answer and Counterclaim.  Docket No. 65.  Defendants alleged six claims against Yuga: (1) knowing misrepresentation of infringing activity; (2) declaratory judgment of no copyright under 17 U.S.C. § 102(a); (3) declaratory judgment of no copyright under 17 U.S.C. § 204(a); (4) intentional infliction of emotional distress ("IIED"); (5) negligent infliction of emotional distress ("NIED"); and (6) declaratory judgment of no defamation.[3]

On February 10, 2023, over six weeks later and after Yuga had filed its own Anti-SLAPP Motion and Motion to Dismiss with respect to Defendants' Counterclaim and while the parties were heavily involved in discovery (including extensive motion practice related to their numerous discovery disputes), Defendants again informed Yuga that they intended to file a motion to stay all proceedings pending resolution of the appeal.  On February 23, 2023, Defendants finally filed their Motion to Stay Proceedings.

---

[2]  In their Anti-SLAPP Motion, Defendants sought an order striking Yuga's state law causes of action pursuant to California's anti-SLAPP statute, California Civil Procedure § 425.16(c) and argued that their RR/BAYC NFTs are protected speech.  Docket No. 48.  In their Motion to Dismiss, Defendants sought an order dismissing Yuga's federal causes of action pursuant to Rule 12(b)(6) or, alternatively, dismissing Yuga's Complaint pursuant to Rule 12(b)(6), and argued that their use of the BAYC trademarks was protected speech under *Rogers v. Grimaldi*, 87 F.2d 994 (2d Cir. 1989) as well as nominative fair use.  *Id.*

[3]  On March 17, 2023, the Court issued an Order dismissing without leave to amend and with prejudice Defendants' second and third Counterclaims, striking and dismissing without leave to amend and with prejudice Defendants' fourth and fifth Counterclaims, and dismissing without prejudice Defendants' sixth Counterclaim.  Docket No. 156.

Initials of Deputy Clerk _sr_

## II.    Legal Standard

The Court's power to stay its proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  In exercising its discretion to grant or deny a stay of a pending action, courts should consider "competing interests" that include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."[4]  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55).  In addition, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court."  *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).  The proponent of a stay has the burden of proving that a stay is justified.  *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

## III.    Discussion

Defendants move for a stay of all proceedings in this action pending the Ninth Circuit's decision on Defendants' appeal of the Court's denial of their Anti-SLAPP Motion with respect to Yuga's state law claims.  Defendants argue that there is substantial overlap between the state law issues raised by their appeal and Yuga's federal claims over which this Court retains jurisdiction, and, as a result, judicial economy strongly counsels in favor of staying the federal claims pending resolution of the appeal.  In its Opposition, Yuga argues that Defendants belated request for a stay is yet another example of Defendants' failure to litigate in good faith and is motivated by the recent issuance of a consent judgment and permanent injunction against Defendants' alleged co-conspirator and software developer.  Yuga argues that Defendants are unable to identify any

---

[4]  It appears that the Ninth Circuit has not addressed whether the three-factor test derived from *Landis v. North American Co.*, 299 U.S. 248 (1936) or the four-factor test set forth in *Nken v. Holder*, 556 U.S. 418, 434 (09) applies to motions for stay pending an interlocutory appeal.  *See Kuang v. United States Department of Defense*, 2019 WL 1597495 (N.D. Cal. Apr. 15, 2019). "Indeed, district courts in this circuit have catalogued a divide 'regarding the appropriate standard by which a district court is to exercise its discretion in whether to grant a stay pending an interlocutory appeal.'" *Id.* (citing *United States ex rel. Atlas Copco Compressors LLC v. Rwt LLC,* 2017 WL 2986586, at *11 n.11 (D. Haw. July 13, 2017)).  However, in the context of civil cases, several district courts within the Ninth Circuit have concluded had that the stay analysis set forth in *Landis*, not the stay analysis set forth in *Nken*, applies when a court is determining whether to stay a case pending the resolution of an interlocutory appeal.  *See, e.g., Peck v. Cnty. of Orange*, 528 F. Supp. 3d 1100, 1105-06 (C.D. Cal. 2021) (*citing Kuang*, 2019 WL 1597495, at *3).  In contrast, in criminal cases, district courts considering requests to stay a case pending the resolution of an interlocutory appeal have generally applied the *Nken* analysis.  *See, e.g., United States v. DeFrance*, 2022 WL 3082410, at *1 (D. Mont. Aug. 3, 2022); *United States v. Olivar*, 2014 WL 12707482, at *1-2 (C.D. Cal. Mar. 31, 2014).  As a result, the Court will apply the *Landis* stay analysis in this case.  However, the Court concludes that Defendants have failed to establish that a stay is warranted under either the *Landis* or the *Nken* analysis.

Initials of Deputy Clerk _sr_

concrete harm they will suffer if this case proceeds to trial on the federal claims.  However, if a stay is issued, Yuga argues it will suffer irreparable harm to its reputation and brand and consumers will continue to be confused and misled by Defendants' infringing conduct.

It is undisputed that Defendants' appeal of the denial of their Anti-SLAPP Motion automatically stays all proceedings regarding Yuga's state law claims.  *See, e.g., All One God Faith, Inc. v. Hain Celestial Grp., Inc.*, 2009 WL 4907433, at *2 n. 2 (N.D. Cal. Dec. 14, 2009).  However, California's anti-SLAPP statute "does not apply to federal law causes of action."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).  However, Defendants' appeal does not automatically stay proceedings regarding Yuga's federal claims.  *See, e.g., Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990) ("[A]n appeal of an interlocutory order does not ordinarily deprive the district court of jurisdiction except with regard to the matters that are the subject of the appeal"); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2016 WL 8607505, at *1 (N.D. Cal. Dec. 22, 2016) (holding that the appeal of the denial of an anti-SLAPP motion only stays proceedings "regarding the state law claims").

In this case, the Court concludes that Defendants have failed to demonstrate that the Court should exercise its discretion and issue a stay of this action pending Defendants' appeal of the Court's denial of their Anti-SLAPP Motion.  To the contrary, the Court concludes that all three *Landis* factors weight heavily against a stay for the reasons discussed below.

### A.    A Stay Will Result in Irreparable Harm to Yuga and the Public

Under the first *Landis* factor, the Court must consider the possible damage that may result from granting a stay of this action.  *Landis*, 299 U.S. at 254-55.  In this case, Yuga argues that it, along with consumers, will continue to suffer irreparable harm from a delayed resolution of Yuga's federal claims.  The Court agrees.  Although Defendants argue that they are no longer "minting" RR/BAYC NFTs, Defendants are still actively promoting their RR/BAYC NFTS, receiving royalties from the secondary sales of their RR/BAYC NFTs, and leveraging this litigation to promote and market those sales.  This type of conduct is misleading and confusing to consumers.  For example, Yuga's survey expert found a confusion rate of 40.4 percent relating to Defendants' use of the BAYC Marks.  In addition, in a separate case brought by Yuga against Thomas Lehman, Defendants' alleged co-conspirator, in the United States District Court for the North District of New York, the court issued a consent judgement and permanent injunction, holding that the adoption and use of "the BAYC Marks to promote the [RR/BAYC NFTs and Defendants' websites] . . . have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public" in violation of the Lanham Act.  *See* Consent Judgment and Order for Permanent Injunction Against Thomas Lehman in *Yuga Labs, Inc. v. Lehman*, Case No. 1:23-cv-00085-MAD-TWD (N.D.N.Y Feb. 6, 2023) (Docket No. 12).  If this type of confusion and deception is allowed to continue, it will result in significant harm to consumers and adversely impact the public interest in protecting trademarks and preventing infringement.  *See Phillip Morris USA Inc. v. Shalabi,* 352 F. Supp. 2d 1067, 1075 (C.D. Cal. 2004) ("It is well established that trademark law protects not only the private interests of the trademark owner but also the public's interest in not being confused by the infringing products"); *Internet Specialties West, Inc. v. Ispwest*, 2007 WL 9706068, at *3 (C.D. Cal. May 21, 2007) ("It is clearly in the public interest to avoid confusion and deception as to the origin of products and services in the marketplace").

In addition, while Defendants have profited and will continue to profit from royalties they receive from secondary sales of the RR/BAYC NFTs[5], Yuga will continue to suffer harm to its goodwill, reputation, and brand equity if these proceedings are stayed and Yuga's federal claims are not promptly resolved.  This loss to reputation and goodwill is "irreparable because it is neither easily calculable . . . nor easily compensable."  *Sprint Solutions, Inc. v. Cell Wholesale, Inc.*, 2015 WL 13919095, at *13 (C.D. Cal. Dec. 10, 2015) (citations omitted); *see also* 15 U.S.C. § 1116(a) (the Trademark Modernization Act of 2020 codified a presumption of irreparable harm on a finding of liability or a likelihood of success on the merits in the case of injunctive relief).

Moreover, a stay would severely undercut the investment of substantial resources that the Court and both parties have expended to keep this case on the schedule requested by Defendants.  Indeed, both parties have been actively been engaged in discovery, taking numerous depositions, and engaging in extensive motion practice before the Court.  Under the current schedule, discovery closes in less than a week – on April 3, 2023 – and the trial will begin on June 27, 2023.  Currently, the Ninth Circuit is generally scheduling oral argument in civil appeals six to twelve months from the date the Notice of Appeal is filed, and decisions are generally issued three to twelve months after submission.  As a result, any stay of Yuga's federal claims pending resolution of Defendants' appeal is likely to delay the case for well over a year and require the parties to revisit, among other things, discovery, expert reports, and summary judgment motions once the case resumes.  Similarly, the "risk of lost evidence weighs against granting a stay." *Bradberry v. T-Mobile USA, Inc.*, 2007 WL 2221076, at *4 (N.D. Cal. Aug. 2, 2007).

Accordingly, the Court concludes that the first *Landis* factor weighs heavily against a stay.

### B.    Defendants Will Not Be Harmed If a Stay Is Not Granted

Under the second *Landis* factor, the Court must consider the hardship or inequity that a party may suffer if a stay is not granted.  *Landis*, 299 U.S. at 254-55.  Although Defendants argue that they will be required to expend time, money, and resources to defend themselves in this action if a stay is not issued, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."  *Lockyer*, 398 F.3d at 1112.  In addition, these generalized and logistical concerns, such as the potential for unnecessary trial preparation and discovery, are not legally cognizable harms warranting a stay of all proceedings. *See Exeltis USA Inc. v. First Databank, Inc.*, 2018 WL 1989522, *3 (N.D. Cal. Mar. 5, 2018) ("[P]articipating in discovery is not a 'harm' at all: it is the routine consequence of the denial of [defendant's] motion to dismiss the Lanham Act claim"); *Breazeale v. Victim Servs., Inc.*, 2015 WL 13687730, at *2 (N.D. Cal. Sept. 14, 2015) (calling "questionable" defendant's argument that the "additional expense and inconvenience of duplicative discovery and litigation" was "irreparable injury").  Moreover, Defendants' argument regarding the time and expense necessary to defend this action is inconsistent with the fact that Defendants have attempted to greatly expand this action by filing their Counterclaims and with the nature and extent of Defendants' written discovery

---

[5]  Although Defendants claims that they are no longer "minting" new RR/BAYC NFTs, Defendants are still promoting their RR/BAYC NFTs and receiving royalties from the secondary sales of those NFTs.  For example, on February 17, 20, and 24, 2023, Cahen retweeted about the resale of RR/BAYC NFTs #2644, #5296, and #3345, respectively.

Initials of Deputy Clerk _sr_

and motion practice.  Indeed, despite Defendants' arguments to the contrary, Cahen has stated in a tweet that he is "looking forward" to going to trial.

Accordingly, the Court concludes that the second *Landis* factor weighs heavily against a stay.

### C.    A Stay Would Not Serve the Orderly Course of Justice

Under the third *Landis* factor, the Court must consider "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *Lockyer*, 398 F.3d at 1110; *see also Landis*, 299 U.S. at 254-55.  In this case, the Court concludes that Defendants' appeal will not simplify any issues.  In denying Defendants' Anti-SLAPP Motion, the Court held that the *Rogers* test did not apply, and that Defendants "failed to make a prima facie showing that Plaintiff's claims 'arise from' an 'act in furtherance of [their] right of petition or free speech."  In addition, the Court held that "[Yuga's] claims are limited to Defendants' heavily commercial use of the BAYC Marks to sell the same product – NFTs – with the same image . . . to the same customers in the same markets as Plaintiff."  Because the Court has concluded that this action concerns Defendants' commercial conduct and not Defendants' free speech rights, the Court also concludes that the orderly course of justice will be best served by resolving Yuga's federal claims as expeditiously as possible.

In addition, the Court concludes that there will be no judicial economy by staying Plaintiff's federal claims.  Because the Court held that Defendants' commercial conduct was not protected speech, the Order denying Defendants' Anti-SLAPP Motion did not address the second step of the anti-SLAPP analysis.[6]  Thus, the Ninth Circuit will not be required to address the second step of the anti-SLAPP analysis.  As a result, it is unlikely that the Ninth Circuit will rule on any issues that could potentially affect Plaintiff's federal claims, let alone any of Defendants' affirmative defenses. *See, e.g., Anheuser-Busch Cos. v. Clark*, 622 F. App'x 671 (9th Cir. 2015) (after ruling on first step of the anti-SLAPP analysis, "remand[ing] so that the district court may consider in the first instance whether [plaintiff] 'has established that there is a probability that it will prevail on the claim'").

Moreover, even if the Ninth Circuit determines that Defendants' conduct constitutes protected speech under the first prong of the anti-SLAPP analysis and concludes that Yuga's state law claims have minimal merit, that would not be determinative of Yuga's federal claims.  *See, e.g., Breazeale v. Victim Services, Inc.*, 2015 WL 13687730, *1 (N.D. Cal. Sept. 14, 2015) (holding that "even if the Ninth Circuit reverses this Court's denial of the defendants' anti-SLAPP motion as to the plaintiffs' state law claims, the plaintiffs' [federal] claim will necessarily survive"); *see also Makaeff v. Trump Univ., LLC*, 2011 WL 613571, at *3 (S.D. Cal. Feb. 11, 2011) (denying motion for stay and holding that the plaintiff's appeal of the denial of her anti-SLAPP motion with respect to a defamation counterclaim "raise[d] issues distinct from those in Plaintiff's claims" and, as a result, "no potential resolution of Plaintiffs' claims can render the entire appeal moot").  Indeed, Yuga's

---

[6]  Courts must evaluate anti-SLAPP motions in two steps.  "Only a cause of action that satisfies both prongs of the anti-SLAPP statute – *i.e.*, that [1] arises from protected speech or petitioning and [2] lacks even minimal merit – is a SLAPP, subject to being stricken under the statute."  *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002).

federal claims involve different issues than the discrete single issue on appeal – Defendants' purported free speech rights.  For example, Yuga's false advertising claim arises out of Defendants' purportedly false statements made for commercial purposes to further market and promote their RR/BAYC NFTs.  Similarly, Yuga's false designation of origin claim arises out "Defendants' heavily commercial use of the BAYC Marks to sell the same product – NFTs – with the same image . . . to the same customers in the same markets as Plaintiff."  Likewise, Yuga's cybersquatting claim arises out of Defendants' use of the BAYC Marks to register domain names (rrbayc.com and apemarket.com) used to sell and promote their RR/BAYC NFTs.

       Accordingly, the Court concludes that the third *Landis* factor weights heavily against a stay.

**IV. Conclusion**

       For all the foregoing reasons, Defendants' Motion is **DENIED**.

       IT IS SO ORDERED.

Initials of Deputy Clerk __sr__

**Exhibit 8 – February 3, 2023 Declaration of Thomas Lehman (ECF No. 149-33) provided in the case *Yuga Labs, Inc. v. Ripps et al* (C.D. Cal. Mar. 15, 2023)**

# Exhibit 27

ETHAN JACOBS (CSB No. 291838)
ethan@ejacobslaw.com
ETHAN JACOBS LAW CORPORATION
100 Pine St., Suite 1250
San Francisco, CA 94111
Telephone: (415) 275-0845

Attorney for Third Party
THOMAS LEHMAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:22-cv-04355-JFW-JEM |
| Plaintiff, | **DECLARATION OF THOMAS LEHMAN** |
| vs. | |
| RYDER RIPPS, JEREMY CAHEN, | Honorable John F. Walter |
| Defendants. | |

I, Thomas Lehman, declare:

1.     I make this declaration based on my own personal knowledge.  If called as a witness, I could and would testify competently to the facts set forth here.

2.     I am a freelance programmer and entrepreneur.  I am the co-founder and CEO of an American digital media company and owner of various NFTs.

## I.     BACKGROUND ON THE RR/BAYC BUSINESS

3.     I participated in a business venture with Ryder Ripps ("Ripps") and Jeremy Cahen ("Cahen" and collectively with Ripps "Defendants"), as well as Ryan Hickman ("Hickman"), to commercialize the Ethereum blockchain smart contract 0xEE969B688442C2d5843Ad75f9117b3ab04b14960 (the "RSVP Contract"), the rrbayc.com website, and the apemarket.com website (rrbayc.com and apemarket.com are collectively the "Websites").  Defendants, Hickman, and I

DECLARATION OF THOMAS LEHMAN                          CASE NO. 2:22-CV-04355-JFW-JEM

1  collectively engaged in the creation and commercialization of the Websites and the
2  RSVP Contract along with the sale of NFTs (the "RR/BAYC NFTs") (the
3  "Business Venture"). On occasion, I used the term the "average joe" to refer to
4  typical consumers of NFTs on NFT marketplaces.

5        4.    In or around May 2022, Cahen called and asked me to participate in
6  the Business Venture.

7        5.    As part of the Business Venture, Defendants, Hickman, and I used the
8  RSVP Contract and the Websites to promote and sell RR/BAYC NFTs, which
9  Ripps designed and/or caused to point to the same images as the authentic BAYC
10  NFTs made by Yuga Labs. We also used social media accounts, primarily on
11  Twitter, to promote RR/BAYC NFTs and Ape Market.

12        6.    Many of our communications about these and related activities
13  occurred on the "Team ApeMarket" Discord chat and "RRBAYC" Telegram chat.
14  Other communications occurred via telephone, text message, email, and other social
15  media platforms.

16        7.    Ripps oversaw the Business Venture, by, in part, providing guidance
17  and input on the design for the Websites, which Hickman and I were working on in
18  addition to the code. Cahen functioned, in part, as a project manager to the
19  Business Venture. Hickman and I also provided input to Defendants on the
20  commercialization of the Business Venture, including some actions we might take
21  to increase our profit.

22        8.    Before I joined the Business Venture, Ripps had created the Ethereum
23  blockchain smart contract 0x2ee6af0dff3a1ce3f7e3414c52c48fd50d73691e, which
24  hosts the RR/BAYC NFTs ("RR/BAYC Contract"). Ripps had already begun
25  calling these NFTs "RR/BAYC" NFTs. In the RR/BAYC Contract, the return
26  value of the name() function is "Bored Ape Yacht Club" and the return value of the
27  symbol() function is "BAYC." The return values of these functions were
28  determined by values that Ripps typed when creating the RR/BAYC Contract.

DECLARATION OF THOMAS LEHMAN            2            CASE NO. 2:22-CV-04355-JFW-JEM

Yuga's Summary Judgment Exhibit 27
Page 20
YUGALABS_00032543
Pg. 42

## II.    THE PURPOSE OF THE BUSINESS VENTURE

9.    One of the reasons I joined the Business Venture was for the purpose of making money. The pitch when I joined was to enable the minting of RR/BAYC NFTs and to help develop an NFT marketplace.

10.    Based on my discussions with Defendants, I understood they also expected the Business Venture to make money. I understand that Ripps acquired the domain apemarket.com before I joined the Business Venture, and when I joined the Business Venture I understood the plan was to build an NFT marketplace. When, or after, I joined the Business Venture, I learned that Defendants planned to use the RR/BAYC NFTs to help launch Ape Market.

11.    I understood, based on more than a few conversations with Defendants, that the Business Venture was expected to make money by selling RR/BAYC NFTs and by potentially generating transaction fees from the sale of NFTs on Ape Market.

12.    When Defendants asked me to assist with the Business Venture, they told me that I could make a lot of money if the Business Venture pursued a plan to entice BAYC NFT holders to use Ape Market by allowing them to resell their Yuga Labs NFTs on Ape Market by having lower fees than on other NFT marketplaces. My expectation was that Defendants would have launched Ape Market had Yuga Labs not sued Defendants.

13.    Cahen also repeatedly discussed listing Yuga Labs' actual/original BAYC NFTs on Ape Market as a way to ensure that the Business Venture generated greater profits from the sale of the RR/BAYC NFTs, which would have been required to list NFTs on Ape Market at fees lower than other marketplaces.

14.    I bought a number of RR/BAYC NFTs in the hope that they would increase in value. I was aware of Cahen and others doing the same.

15.    When we discussed "cutting Yuga to 0," we meant that consumers could use Ape Market to sell authentic Yuga Labs BAYC NFTs and the Business

DECLARATION OF THOMAS LEHMAN                3                CASE NO. 2:22-CV-04355-JFW-JEM

**Yuga's Summary Judgment Exhibit 27**
Page 21
YUGALABS_00032544

**Pg. 43**

1  Venture would set the percentage of the sale price (known as a royalty or creator

2  fee) at 0%. This could net us millions of dollars in the Business Venture by

3  attracting BAYC holders and traders to Ape Market.

4      16.    Before the lawsuit was filed, Hickman wrote in the Team ApeMarket

5  Discord chat "We're closing in on *$10 million impact to yuga."

6      17.    I wrote in the Team ApeMarket Discord that "But yes, I guess

7  RR/BAYC is low effort art / scam." In a Twitter direct message to a friend, I wrote

8  "I guess Ryder doin the full on scammer larp haha."

9  **III.    DEFENDANTS USED YUGA LABS' MARKS**

10      18.    The Business Venture used Yuga Labs' BAYC Marks (BORED APE

11  YACHT CLUB, BAYC, BORED APE, APE, BA YC Logo, BA YC BORED APE

12  YACHT CLUB Logo, and Ape Skull Logo), including in the name RR/BAYC, on

13  rrbayc.com and apemarket.com, on Foundation, on OpenSea, and elsewhere. This

14  use was intentional.

15      19.    Without Yuga Labs' widespread reputation and branding, the Business

16  Venture would not have made money.

17      20.    I was concerned that Defendants' uses of Yuga Labs' BAYC marks in

18  the Business Venture would result in a lawsuit by Yuga Labs.

19      21.    I repeatedly shared my concerns with Defendants. For example:

20          a.    I (and others) voiced concerns to Defendants that selling

21  RR/BAYC NFTs alongside Yuga Labs' BAYC NFTs on Ape Market could cause

22  confusion between RR/BAYC NFTs and BAYC NFTs.

23          b.    I warned Defendants that using the "BAYC" mark alongside the

24  RR/BAYC NFTs could be confusing on Ape Market.

25          c.    I warned that "we should not under-estimate how confusing"

26  using the BAYC logo alongside the RR/BAYC logo on Ape Market is.

27

28

DECLARATION OF THOMAS LEHMAN         4         CASE NO. 2:22-CV-04355-JFW-JEM

**Yuga's Summary Judgment Exhibit 27**
**Page 22**
YUGALABS_00032545
**Pg. 44**

1      d.     I warned that if we did not take action to distinguish the
2   RR/BAYC NFTs and the BAYC NFTs and the logos for each on Ape Market, the
3   "average joe" would be confused on Ape Market.

4      e.     I also expressed my concern to Defendants that the fact that the
5   token IDs of the RR/BAYC tokens did not match the names of the RR/BAYC
6   NFTs, and instead the RR/BAYC name matched the name of the original BAYC
7   NFT, would cause confusion.

8      f.     I recommended that it was not worth fighting trademark issues
9   over rrbayc.com and that we were migrating off of it to Ape Market, and I advised
10  that Ape Market should use a new logo and maybe change the display name of the
11  RR/BAYC NFTs on Ape Market.

12     22.    On at least one occasion, Defendant Cahen affirmatively agreed with
13  the concern about underestimating how confusing it would be to use the BAYC
14  logo alongside the RR/BAYC logo on Ape Market.

15     23.    To address the concerns I raised with Defendants, I suggested to
16  Defendants to use less of Yuga Labs' trademarks or take other steps to distinguish
17  the BAYC NFTs from the RR/BAYC NFTs on Ape Market.  For example, to add a
18  label or other similar sign to the BAYC images of RR/BAYC NFTs in order to
19  differentiate between the RR/BAYC NFTs and BAYC NFTs on Ape Market.

20     24.    Defendants did not respond to my communications raising these
21  concerns by telling me to implement the proposals I made to address them.

22     25.    I believed that purchasers of RR/BAYC NFTs on Foundation.app
23  might think they were buying authentic BAYC NFTs if they did not conduct further
24  research (e.g., inspect the identity of the creator of the collection on one of the
25  pages corresponding to a token of the collection), as there was not the same
26  disclaimer as on the rrbayc.com website.

27

28

DECLARATION OF THOMAS LEHMAN                5                CASE NO. 2:22-CV-04355-JFW-JEM

Yuga's Summary Judgment Exhibit 27
Page 23
YUGALABS_00032546

Pg. 45

26.     As RR/BAYC NFT sales increased, various NFT marketplaces took down listings of RR/BAYC NFTs. Defendants took it in stride and said it was good marketing for Ape Market.

27.     Defendant Cahen informed me in the Team ApeMarket Discord chat that Defendants' attorney advised Defendants to change the skull logo, which was a Yuga Labs trademark, to defend against trademark infringement claims. I am not aware of any change Defendants made in response to this attorney's advice.

28.     Defendant Cahen later said that allowing users to list RR/BAYC NFTs for sale on Ape Market while RR/BAYC NFTs were banned on other marketplaces could drive usage of Ape Market.

## IV.     DEFENDANTS' MARKETING AND PROMOTION OF RR/BAYC NFTS AND APE MARKET

29.     Ripps instructed Hickman and me to reserve 500 RR/BAYC NFTs for him for the purpose of promoting RR/BAYC NFTs and Ape Market, such as through giveaways. When the word "shilling" was used in the Team ApeMarket Discord, I understood it to refer to promotion of the Business Venture.

30.     Defendants also tried to promote RR/BAYC NFTs and Ape Market to current and potential BAYC owners. For example, Cahen proposed promoting Ape Market directly to the "Yuga Community."

31.     Ripps also proposed handing out coupon codes for RR/BAYC NFTs while attending Yuga Labs' June 2022 ApeFest event, and Cahen called it "fire", which I understood to mean that he thought it was a good idea. I understood ApeFest to be a widely publicized and popular event for Yuga attended by BAYC NFT holders and BAYC enthusiasts.

32.     We intentionally promoted RR/BAYC NFTs during Yuga Labs' ApeFest to try to "mint out" (i.e., to sell) the remainder of the RR/BAYC NFTs.

DECLARATION OF THOMAS LEHMAN                    6                    CASE NO. 2:22-CV-04355-JFW-JEM

Yuga's Summary Judgment Exhibit 27
Page 24
YUGALABS_00032547
**Pg. 46**

## V.   PROFITS AND ROYALTIES

33.   In exchange for developing the RSVP Contract and rrbayc.com website for the Business Venture, I was to receive 15% of the combined revenue of the RR/BAYC mints with and without the RSVP Contract.

34.   It is my understanding that Cahen and Hickman each received 15% of the combined revenue, as I did, and Ripps received the remaining 55% of the combined revenue from the sale of the mint of the RR/BAYC NFTs.

35.   This distribution of revenue for this contract is reflected in the code for the RSVP Contract, as shown in the Etherscan screenshot below.



36.   It is my understanding that, as shown in the screenshot above, one of Ryder Ripps' cryptocurrency wallet addresses is 0x592814FF14E030B51F6087032DB0f88F4214F254, one of Jeremy Cahen's cryptocurrency wallet addresses is 0x7D2550161E8A31D0b9585Bb9c88E63E9644af740, and one of Ryan Hickman's cryptocurrency wallet addresses is 0xF9C2Ba78aE44ba98888B0e9EB27EB63d576F261B.

37.   It is my understanding that at least Ripps also received royalties from the re-sale of RR/BAYC NFTs through NFT marketplaces Foundation and LooksRare. I have not received any of these royalties.

DECLARATION OF THOMAS LEHMAN                    7                    CASE NO. 2:22-CV-04355-JFW-JEM

Yuga's Summary Judgment Exhibit 27
Page 25
YUGALABS_00032548
Pg. 47

38.   Cahen proposed splitting revenue from Ape Market equally, so that each of us would receive 25% of Ape Market revenue. However, Ape Market was never launched, and I never received any revenue from it.

## VI.   EXHIBITS

39.   Documents I produced to Fenwick & West LLP on October 19, 2022 in a folder labeled "Discord Messages" are true and correct captures of messages sent and/or received by myself through the instant messaging social platform Discord. Representative copies of which are available at LEHMAN0000291–LEHMAN0000307. The list below identifies the individuals who, to the best of my knowledge and belief, are associated with each Discord username.

- "ryder ⬛ [#2044]" is Defendant Ryder Ripps
- "Pauly Shore[#6539]" is Defendant Jeremy Cahen
- "middlemarch.eth[#6541]" is Thomas Lehman (myself)
- "hwonder [#9609]" is Ryan Hickman

40.   Documents I produced to Fenwick & West LLP on October 17, 2022 in a folder labeled "Email" are true and correct captures of emails sent and/or received through my email account tom.s.lehman@gmail.com. Representative copies of which are available at LEHMAN0000001–LEHMAN0000002.

41.   Documents I produced to Fenwick & West LLP on October 17, 2022 in a folder labeled "Google Drive" are true and correct files obtained from my Google Drive account associated with my tom.s.lehman@gmail.com email. Representative copies of which are available at LEHMAN0000219–LEHMAN0000226, LEHMAN0000234, LEHMAN0000235, LEHMAN0000241–LEHMAN0000247, LEHMAN0000254–LEHMAN0000290.

42.   Documents I produced to Fenwick & West LLP on October 17, 2022 in a folder labeled "Local Files" are true and correct files obtained from my personal computer. Representative copies of which are available at

Yuga's Summary Judgment Exhibit 27
Page 26
YUGALABS_00032549
Pg. 48

1  LEHMAN0000227–LEHMAN0000233, LEHMAN0000236–LEHMAN0000240,

2  LEHMAN0000248–LEHMAN0000253.

3      43.   Documents I produced to Fenwick & West LLP on October 17, 2022

4  in a folder labeled "Source Code" are true and correct source code files for the

5  RSVP Contract, rrbayc.com, and apemarket.com.  Representative copies of which

6  are available at LEHMAN0000308.

7      44.   Documents I produced to Fenwick & West LLP on October 17, 2022

8  in a folder labeled "Telegram" are true and correct captures of messages sent and/or

9  received by me through the instant messaging service Telegram.  Representative

10  copies of which are available at LEHMAN0000314.  The list below identifies the

11  individuals who, to the best of my knowledge and belief, are associated with each

12  Telegram username.

13      •   "Ryder Ripps" is Defendant Ryder Ripps

14      •   "Pauly Shore" is Defendant Jeremy Cahen

15      •   "Tom" is Thomas Lehman (myself)

16      •   "Hwonder" is Ryan Hickman

17      •   "Arze" is Ezra Ripps

18      45.   Documents I produced to Fenwick & West LLP on October 17, 2022

19  in a folder labeled "Text Messages" are true and correct captures of text messages

20  obtained from my personal cell phone.  Representative copies of which are

21  available at LEHMAN0000003–LEHMAN0000110.  On December 21, 2022, I also

22  produced to Fenwick & West LLP additional true and correct captures of text

23  messages obtained from my personal cell phone.  Representative copies of which

24  are available at LEHMAN0000309–LEHMAN0000311 and LEHMAN0000312–

25  LEHMAN0000313.

26      46.   Documents I produced to Fenwick & West LLP on October 19, 2022

27  in a folder labeled "Twitter Direct Messages" are true and correct captures of

28  messages sent and/or received by me through the social media service Twitter.

DECLARATION OF THOMAS LEHMAN      9      CASE NO. 2:22-CV-04355-JFW-JEM

Yuga's Summary Judgment Exhibit 27
Page 27
YUGALABS_00032550
Pg. 49

1   Representative copies of which are available at LEHMAN0000111–

2   LEHMAN0000218.  The list below identifies the individuals who, to the best of my

3   knowledge and belief, are associated with each Twitter username.

4          • "RYDER-RIPPS.ETH 🔜 (ryder_ripps)" is Defendant Ryder Ripps

5          • "PAULY 🔜 (Pauly0x)" is Defendant Jeremy Cahen

6          • "middlemarch.eth 🔜 (dumbnamenumbers) is Thomas Lehman

7            (myself)

8          • "hwonder | axel foley | # (hWonderofWorld)" is Ryan Hickman

9

10      I declare under penalty of perjury and the laws of the United States that the

11   foregoing is true and correct.  Executed on the third day of February 2023.

12

13

14   Dated: February 3, 2023       By: _____

                                       Thomas Lehman

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF THOMAS LEHMAN       10       CASE NO. 2:22-CV-04355-JFW-JEM

Yuga's Summary Judgment Exhibit 27
Page 28
YUGALABS_00032551

# Exhibit 9 – Yuga Labs' Status Report (ECF No. 198) filed in the case *Yuga Labs, Inc. v. Ripps et al*. (C.D. Cal. Apr. 4, 2023)

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:   650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> RYDER RIPPS, JEREMY CAHEN, <br><br> Defendants and Counterclaim Plaintiffs. | Case No.: 2:22-cv-04355-JFW-JEM <br><br> **DISCOVERY MATTER** <br><br> **PLAINTIFF YUGA LABS, INC.'S STATUS REPORT** <br><br> Mag. Judge:  Hon. John E. McDermott <br> Motion Hearing Date:  N/A <br> Motion Hearing Time:  N/A <br> Discovery Cutoff Date: April 3, 2023 <br> Pre-Trial Conference Date: June 9, 2023 <br> Trial Date:  June 27, 2023 |

FENWICK & WEST LLP
ATTORNEYS AT LAW

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA  90401
Telephone:  310.434.4300

DAVID Y. SILLERS (*admitted pro hac vice*)
david@clarelocke.com
KATHRYN HUMPHREY (*admitted pro hac vice*)
kathryn@clarelocke.com
MEGAN L. MEIER (*admitted pro hac vice*)
megan@clarelocke.com
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA  22314
Telephone:   202.628.7400

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

YUGA LABS' STATUS REPORT RE
DISCOVERY ORDER

Case No. 2:22-cv-04355-JFW-JEM

Pg. 53

1    Pursuant to the Court's March 14, 2023 Order (Dkt. 145), Plaintiff Yuga Labs,

2  Inc. ("Yuga Labs") respectfully submits this Status Report.  Defendants have failed

3  to comply with the Court's Order in several material respects by unjustifiably

4  withholding highly relevant materials, as described below.  Yuga Labs respectfully

5  requests that the Court grant all relief it deems appropriate, or set a hearing date to

6  resolve the issues described herein.

7    On March 14, 2023, the Court ordered Defendants to "produce any remaining

8  relevant, nonprivileged documents responsive to categories 1, 4, 5, 6 and 7 in Yuga's

9  Joint Stipulation (Dkt. 109-1 at 2, 7-9) **within 7 days of this Order**."  Dkt 145 at 2

10  (emphasis in original).  Categories 1 and 7 in that list are "Text messages between

11  Ripps and Cahen" and "Private Twitter direct messages between Defendants,"

12  respectively.  The Court's order came in response to Defendants' withholding of

13  ***all pre-litigation communications*** between them based on a vaguely asserted

14  privilege objection (despite no assertion that they had engaged counsel at any point

15  pre-litigation).  In its March 14 Order, the Court stated: "The Court takes a dim view

16  of Defendants' blanket withholding of pre-litigation communications between Ripps

17  and Cahen (category 1) in the absence of counsel. . . .  The Court regards the

18  communications between Ripps and Cahen as critical documents, and will not

19  hesitate to order <u>in camera</u> review if Defendants continue their blanket withholding

20  of those documents."  *Id.* at 3.  The Court's Order was, in part, a culmination of the

21  Defendants' prior failures to comply with discovery obligations.  The Court had

22  previously ordered Ripps on January 10, 2023 to produce "all relevant non-privileged

23  documents," Dkt. 79, which he verified under penalty of perjury that he did; that

24  verification was false, as Defendants subsequently produced relevant, non-privileged

25  documents on March 15, March 21, and March 29.[1]

26  _____

27  [1]  Defendants have not provided any reason this information was not provided prior
to Ripps' verification.  These productions included many responsive documents and
communications (e.g., text messages and Twitter direct messages) from applications

28  that Defendants previously alleged to have searched.

Fenwick & West LLP
ATTORNEYS AT LAW

1    Consistent with this trend, Defendants also did not comply with the Court's

2   March 14 Order.  Defendants declared under penalty of perjury on March 21, 2023,

3   that they each "produced all relevant, nonprivileged documents in categories 1, 4, 5,

4   6 and 7 in my custody, control or possession."  Dkts. 157, 158.  They have not.  Most

5   critically, they have unjustifiably withheld *every single communication* between

6   them prior to May 14, 2022 — the date of the initial mint of the counterfeit NFTs.

7   *See* Declaration of Ethan Thomas ("Thomas Decl.") Exhibit 1.  In other words,

8   Defendants have unilaterally decided to categorically withhold all communications

9   regarding the planning of their infringing products.  Yuga Labs raised this issue to

10   Defendants' attention the day after their compliance with the March 14 Order was

11   due, and their response was that "the RR/BAYC Project began in mid-May and so it

12   should be no surprise that texts relevant to the RR/BAYC Project began at a similar

13   time."  Thomas Decl. Exhibit 2.  This response is not credible, and it is inconsistent

14   with Defendants' own admissions that, for instance, (1) Defendants began work on

15   their infringing "Ape Market" NFT marketplace in December 2021 and

16   (2) Defendants allege that they began their campaign against Yuga Labs "[a]s early

17   as November 2021."  Answer and Counterclaims (Dkt. 65) ¶ 45.  Moreover,

18   Defendants continue to resist producing their communications between them by now

19   claiming that "nearly all the communications occurred on Discord," but they have

20   produced no Discord communications whatsoever between the two of them directly

21   (notwithstanding that discovery has shown that both Defendants communicated

22   extensively with others on Discord).  Additionally, Defendants continue to say that

23   there are no "relevant, *nonprivileged* materials" they are withholding (emphasis

24   added) — yet they have failed to identify a single assertion of privilege over such

25   communications on a privilege log.

26    Defendants continue to conceal other relevant evidence as well, which Yuga

27   Labs continues to learn about through third-party discovery and statements.  For

28   instance, recent public information reveals the existence of Twitter messages

FENWICK & WEST LLP
ATTORNEYS AT LAW

involving Defendants about Yuga Labs that have not been disclosed.  On the same day that Defendants submitted their declarations to the Court, they released and began promoting a document compiled to — in the words of a collaborator — "bring down [Yuga Labs]."  Thomas Decl. Exhibits 1, 3.  This collaborator — someone Defendants disclosed in their initial disclosures as an individual likely to have discoverable information — publicly acknowledged the existence of yet another source of information Defendants have wrongfully concealed entirely.  In an exchange on Twitter with Ripps, he referenced a "group chat" that concerned Yuga Labs.  *Id.*  The tweet also mentions Cahen as a participant in that same group chat.  These are messages between Defendants on Twitter (Category 7 of the Court's Order), and they are not available from any source other than Defendants.  Thomas Decl. Exhibit 3 (stating Defendants removed the third party from the chat so that he could no longer access the messages).  Ripps made comments about Yuga Labs in this same public Twitter thread, which he then deleted but has failed to produce.  *See, e.g.*, Thomas Decl. Exhibit 4.  These communications are plainly responsive to Yuga Labs' RFP No. 1 ("All documents and communications concerning Yuga Labs"), and they are relevant to Defendants' intentional infringement, their purported artistic motives, and whether this is an exceptional case under the Lanham Act.  Defendants deny that these messages exist.  Thomas Decl. Exhibit 2.  But, given Defendants' numerous false representations to date about the existence of relevant discovery, which Yuga Labs has disproven through costly third-party discovery only for Defendants to later acknowledge and produce, this response is inadequate and not credible.

Yuga Labs requested significant remedies in its motion for sanctions (Dkt. 109), which the Court declined to grant at the time following Defendants' supplemental productions (Dkt. 145).  Defendants have continued to make clear however that they will sidestep the Court's orders by hiding the ball and resisting discovery, and alternative options to address that noncompliance have again proven

Fenwick & West LLP
ATTORNEYS AT LAW

1  inadequate.  Discovery has now closed, Yuga Labs' motion for summary judgment

2  is pending, and despite ample opportunity to come into compliance before the close

3  of discovery, Defendants (1) have still withheld their most critical documents that

4  likely show their intentional infringement and knowledge that consumers would be

5  confused and (2) have not provided any privilege log to support their bald assertion

6  of privilege.

7      Based on the category of documents Defendants refuse to produce —

8  including communications between Defendants leading up to the public release and

9  sale of their counterfeit NFTs — an appropriate adverse inference would be that

10  Defendants (1) intended to infringe Yuga Labs' BAYC Marks, (2) knew that their

11  use of the BAYC Marks was likely to cause confusion among Yuga Labs'

12  consumers, and (3) knew that their use of the BAYC Marks was not expressive or

13  artistic.  In the alternative, Yuga Labs respectfully requests an alternative appropriate

14  remedy the Court deems proper.

15

16  Dated:  April 4, 2023          FENWICK & WEST LLP

17

18                                By: */s/ Ethan M. Thomas*

19                                     Ethan M. Thomas
                                      Attorneys for Plaintiff and
20                                     Counterclaim Defendant
                                      YUGA LABS, INC.
21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

YUGA LABS' STATUS REPORT RE
DISCOVERY ORDER                          4            Case No. 2:22-cv-04355-JFW-JEM

# Exhibit 10 – Consent Judgment (ECF No. 12) filed in the case *Yuga Labs, Inc. v. Lehman*. (N.D.N.Y Feb. 6, 2023))

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                            :

Yuga Labs, Inc.,                               :   Case No. 1:23-cv-00085-MAD-TWD

                         :

              Plaintiff,         :   **CONSENT**

                         :   **JUDGMENT AND ORDER FOR**

      v.                    :   **PERMANENT INJUNCTION**

                         :   **AGAINST THOMAS LEHMAN**

Thomas Lehman,                   :

                         :

              Defendant.      :

                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Plaintiff Yuga Labs, Inc. ("Yuga Labs") filed a Complaint for a permanent injunction and other equitable relief pursuant to the Lanham Act § 1051 *et seq*, and other causes of action, against Defendant Thomas Lehman ("Lehman") for his role in the design, development, marketing, promotion, sale, and offering for sale in interstate commerce of non-fungible tokens ("NFTs") known as "RR/BAYC NFTs"; a website at the domain www.rrbayc.com; and a website at the domain www.apemarket.com (the "Infringing Products and Services"). Plaintiff Yuga Labs and Defendant Lehman having been represented by attorneys in this matter, have agreed to entry of this Consent Judgment and Order for Permanent Injunction ("Consent Judgment") by the Court to resolve all matters in dispute in this action against Defendant Lehman.

Pursuant to stipulation between Plaintiff Yuga Labs and Defendant Lehman and for good cause shown, the Court hereby orders, adjudges, and decrees that:

1.    The Court has subject matter and personal jurisdiction over this action and Defendant Lehman under the Lanham Act § 1051 *et seq*. Venue is proper in this district under 28 U.S.C. § 1391 in that a substantial part of the events and omissions giving rise to the claims herein have occurred in this district.

2.      Plaintiff Yuga Labs has used the BAYC Marks (collectively, the BAYC Marks are BORED APE YACHT CLUB, BAYC, BORED APE, APE, BA YC Logo, BA YC BORED APE YACHT CLUB Logo, and the Ape Skull Logo) in commerce continuously since at least April 2021 for its logo, website, social media pages, marketing, and in connection with its partnerships, products and services.

3.      As a result of its widespread, continuous, and exclusive use of the BAYC Marks to identify its partnerships, products, and services, and Plaintiff Yuga Labs as their source, Plaintiff Yuga Labs owns valid and subsisting rights to the BAYC Marks.

4.      Defendant Lehman acknowledges Plaintiff Yuga Labs' ownership of and the validity of the BAYC Marks.

5.      Without Plaintiff Yuga Labs' authorization, and upon information and belief, beginning after Plaintiff Yuga Labs acquired protectable exclusive rights in its BAYC Marks, Defendant Lehman adopted and began using the BAYC Marks to promote the Infringing Products and Services in US commerce.

6.      Defendant Lehman's acts have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Infringing Products and Services and have deceived and are likely to deceive the relevant consuming public into believing, mistakenly, that the Infringing Products and Services originate from, are associated or affiliated with, or are otherwise authorized by Plaintiff Yuga Labs.  For these and other reasons, Defendant Lehman's conduct has caused and, unless enjoined, will continue to cause damages and irreparable injury to Yuga Labs with an incalculable loss of goodwill.

7.      The foregoing conduct by Defendant Lehman constitutes a violation of the Lanham Act's False Designation of Origin and False Advertising Laws (15 U.S.C. § 1125(a)). The Court

hereby enters judgment against Defendant Lehman on this claim for his role in the design, development, marketing, promotion, sale, and/or offering for sale in interstate commerce of:

     a.    non-fungible tokens known as "RR/BAYC NFTs";

     b.    a website at the domain www.rrbayc.com; and

     c.    a website at the domain www.apemarket.com.

**8.**    Defendant Lehman is hereby permanently restrained and enjoined from, directly or indirectly, anywhere in the world:

     a.    Using in any manner any BAYC Mark and/or confusingly similar designation alone or in combination with other words or designs as a trademark, trade name component, or otherwise, to market, advertise, or identify any product and/or service not produced, offered, or authorized by Yuga Labs;

     b.    Using or counterfeiting any BAYC Mark or any confusingly similar marks, reproductions, counterfeit copies, or spurious imitations thereof, on or in connection with the offering of any goods and/or services, website, or social media, including but not limited to owning or operating www.rrbayc.com or www.apemarket.com;

     c.    Operating any other website, licensing business or other business, entity or store that purports to originate from Yuga Labs, or to be sponsored or licensed by, or affiliated with Yuga Labs, or contains any portion of the BAYC Marks within its name or d.b.a., when it is not;

     d.    Operating any social media account, including but not limited to www.discord.com or www.twitter.com account(s) that purport to originate from Yuga Labs, or to be sponsored or licensed by, or affiliated with Yuga

3

Labs or contains any portion of the BAYC Marks within its name d.b.a., or username, when it is not;

e.    Registering, owning, or using any domain name that consists of any of the BAYC Marks, or includes "BAYC" or "bored" or "ape" in the domain portion of the domain name and is being used in connection with the BAYC Marks, or any other Yuga Labs source identifier, or that is confusingly similar thereto, or that is calculated to confuse consumers into thinking that the website(s) accessible via the domain name(s) originate with/from Yuga Labs, or is/are sponsored or licensed by, or affiliated with, Yuga Labs, when it is/they are not;

f.    Registering, owning, or using any entity whose name or d.b.a. consists of the BAYC Marks, or includes "BAYC", "Bored", "Ape", or "Yuga" or that is confusingly similar to any of the BAYC Marks, or that is calculated to or reasonably likely to confuse consumers into believing that the Defendant is Yuga Labs, affiliated with Yuga Labs, or sponsored by Yuga, when he is not;

g.    Using in connection with Defendant's activities, goods, or services (or purported goods or services) any false or deceptive designations, representations, or descriptions of Defendant or his activities, goods, or services (or purported goods or services) any false or deceptive designations, representations, or descriptions of Defendant or his activities, goods, or services (or purported goods or services), whether by symbols, words, designs, statements, photographs, or other devices which would damage or

4

injure Yuga Labs or its customers, or would give Defendant an unfair competitive advantage or result in consumer deception;

h.   Committing other acts calculated to or reasonably likely to cause consumers to believe that Defendant's domain names, websites, web content, goods and/or services (including but not limited to any NFT or NFT collection) are offered under the authorization, sponsorship, supervision, or control of Yuga Labs, or otherwise are connected with Yuga Labs, when they are not;

i.   Further infringing any BAYC Mark and/or any other Yuga Labs source identifier, or damaging any of its or their associated goodwill;

j.   Using, linking to, transferring, selling, exercising control over, or otherwise owning or accessing www.rrbayc.com or www.apemarket.com; and

k.   Using, transferring, exercising control over, or otherwise accessing any accounts used in the transfer of money or electronic currency, including but not limited to Bitcoin or Ethereum, or in the processing of card-based transactions associated with the Infringing Products or Services or any product or service that uses the BAYC Marks.

**9.**   Within fourteen (14) days after entry of this Consent Judgment, Defendant Lehman shall destroy any materials in his possession or control publicly displaying the BAYC Marks or any other mark confusingly similar with the BAYC Marks.  If Defendant Lehman owns any RR/BAYC NFT, he shall "burn" (e.g., destroy) that NFT or provide it to Yuga Labs to burn.

**10.**   Each party shall pay their own attorneys' fees that have accrued on or before the execution of this Consent Judgment.

11.     If Defendant Lehman breaches any term of this Consent Judgment, Defendant Lehman shall be responsible to pay Yuga Labs $25,000 in liquidated damages to help defray the costs to Yuga Labs incurred in connection with this action to stop Defendant Lehman's infringement of the BAYC Marks and to address the actual harm such infringement has caused and would cause in the future if such infringement resumed.  Defendant Lehman shall also be responsible to reimburse Yuga Labs its reasonable attorneys' fees and costs incurred in connection with any future enforcement of this Consent Judgment.

12.     Upon service of this Order for Permanent Injunction, Defendant Lehman shall be deemed to have actual notice of the issuance and terms of the permanent injunction, and any act in violation of any of the terms of the permanent injunction may be considered and prosecuted as contempt of Court, and such other, further relief this Court deems just and proper.

13.     In the event Yuga Labs identifies additional infringing products or services in connection with Defendant Lehman's trademark infringement, Yuga Labs may move the Court for an order modifying this injunction as appropriate.

14.     To the extent Yuga Labs identifies additional social media accounts or domains associated with Defendant Lehman, that purport to originate from Yuga Labs, or to be sponsored or licensed by, or affiliated with Yuga Labs or contains any portion of the BAYC Marks within its name d.b.a., or username, Yuga Labs may serve this Order for Permanent Injunction on the appropriate third party website or registrar responsible for services involved with keeping the social media account or domain online, in order to freeze and/or make such accounts or domains frozen and inaccessible to Defendant Lehman.

15.     Defendant Lehman hereby waives any and all right to an appeal from this Consent Judgment.

16.    Yuga Labs' second cause of action for cybersquatting (15 U.S.C. § 1125(d)) is dismissed without prejudice.

17.    This Court shall retain jurisdiction over this Consent Judgment, and any applications with regard to enforcement of it shall be directed to this Court.

18.     The permanent injunction shall remain in full force and effect unless and until modified by order of this court.

**IT IS SO ORDERED.**

Dated:  February 6, 2023 _____

_____
Honorable Mae A. D'Agostino